**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

BOBOKULOV AKMAL,

          Petitioner,

    v.

WARDEN OF CALIFORNIA CITY
DETENTION,

          Respondent.

No.  1:25-CV-01921-DC-DMC-HC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding pro se, brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Pending before the Court are Petitioner's petition for a writ of habeas corpus, ECF No. 1, Respondent's answer, ECF No. 8, and Petitioner's reply, ECF No. 9.

## I. BACKGROUND

Petitioner asserts that he was taken into immigration custody April 24, 2024. See ECF No. 1, pg. 4. Petitioner contends that upon arrival, he went to authorities to seek asylum, which was rejected, and Petitioner has subsequently appealed that rejection. See id. at 5 and 9. Petitioner asserts that his immigration case has been delayed and believes the appeal will take at least a year to resolve. See id. at 9.  According to Petitioner, he has been detained for "almost 20 months and refused to have a bond hearing." Id. at 6. Petitioner contends his detention violates

1

Due Process because it is prolonged and without a bond hearing. See id. at 6.  Petitioner asserts that conditions of detention are "same as prison," he has not had any violations while in detention. Id. at 9.  Petitioner contends that he has a law degree in his country, and if released he can live with his brother as a sponsor in Los Angeles. See id. In the petition, Petitioner does not seek to challenge his asylum decision but rather, requests release pending resolution of his appeal, or a bond hearing before a neutral decisionmaker. See id. at 7.

Respondent contends that "Petitioner is subject to expedited removal, and his detention is mandatory 'until removed.'" ECF No. 5, pg. 1 (quoting 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Respondent asserts that on December 12, 2024, an immigration judge ordered Petitioner removed to his country of Tajikistan and then, on January 10, 2025, Petitioner appealed that decision. See id. at 2. Respondent contends that the Board of Immigration Appeals (BIA) affirmed the removal decision and dismissed the appeal on June 6, 2025, and Petitioner filed for review with the Ninth Circuit around July 7, 2025. See id. According to Respondent, Petitioner's request for custody redetermination was denied August 20, 2024, Petitioner's request for change in custody status was denied on April 9, 2025, and Petitioner's request for custody redetermination was denied on July 7, 2025, on the grounds that Petitioner is a flight risk. See id. (citing Respondent Exhibit 1, 2, and 3).

Respondent contends that "Petitioner's detention is mandatory pursuant to 8 U.S.C. § 1225(b)(1)(B)(ii)." Id. at 3. Respondent asserts that, even if his detention were not mandatory, "Petitioner has had a custody redetermination, and Petitioner has not provided any evidence in support of a change in circumstance since that custody redetermination." Id. According to Respondent, that Petitioner's request for custody redetermination was denied on July 7, 2025, because an immigration judge found Petitioner to be a flight risk, Petitioner would have to show a change in circumstance in order to change a determination made by an immigration judge. See id. (citing In Matter of Sugay, 17 I.&N. Dec. 637,640 (BIA 1981)). Respondent contends that because "Petitioner has not provided any facts, evidence, or argument for any change in circumstance since his custody redetermination," a redetermination hearing is not warranted. Id.

2

Respondent attaches three exhibits to the answer, showing Petitioner's denial of a custody redetermination on August 20, 2024, citing "Respondent is not eligible for bond pursuant to Matter of M-S-," Petitioner's denial of change in custody status on April 9, 2025, finding that the Court has no jurisdiction because "Mandatory Detention under 235(b)(2)(A) and Matter of M-S-," and Petitioner's denial of a custody redetermination on July 7, 2025, finding Petitioner is a flight risk. ECF No. 5-2.

## II. DISCUSSION

For the reasons explained herein, the undersigned will recommend granting in part and denying in part Petitioner's petition for writ of habeas corpus, recommending granting as to ordering the government to conduct a bond hearing, before an immigration judge in accordance with the requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011) and denying the petition in all other respects.

### A. **Immigration Detention**

The most important consideration to determine whether immigration detention is mandatory or discretionary, and the process afforded to the detainee to challenge such detention is what statute, and section of said statute, the individual falls under. See Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th 525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'" Id. (alteration in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under Subsection A is discretionary" and "provides for release on bond or conditional parole." Id. "Subsection C provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Id. at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)). "[D]etention under Subsection C is mandatory," and "[r]elease under Subsection C is limited to certain witness protection purposes." Id. "Section

3

1231(a) applies to detention after the entry of a final order of removal" and "governs detention during a ninety-day 'removal period' after the conclusion of removal proceedings." Id. at 530–31.

Here, Respondents assert that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) and concede that at the time the instant petition was filed, Petitioner had been detained for twenty months.[1] (ECF No. 9 at 2.) "Under . . . 8 U.S.C. § 1225, an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" Jennings v. Rodriguez, 583 U.S. 281, 287 (2018) (quoting 8 § 1225(a)(1)). "Applicants for admission must 'be inspected by immigration officers' to ensure that they may be admitted into the country consistent with U.S. immigration law." Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(3)). "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." Jennings, 583 U.S. at 287. Section "1225(b)(1) . . . authorize[s] the detention of certain aliens." Id.

> Aliens covered by § 1225(b)(1) are normally ordered removed "without further hearing or review" pursuant to an expedited removal process. § 1225(b)(1)(A)(i). But if a § 1225(b)(1) alien "indicates either an intention to apply for asylum ... or a fear of persecution," then that alien is referred for an asylum interview. § 1225(b)(1)(A)(ii). If an immigration officer determines after that interview that the alien has a credible fear of persecution, "the alien shall be detained for further consideration of the application for asylum." § 1225(b)(1)(B)(ii).

> Jennings, 583 U.S. at 287

"[A]pplicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Id. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)) (citing 8 C.F.R §§ 212.5(b), 235.3 (2017)). "The Attorney General [has] interpreted 8 U.S.C. § 1225(b)(1)(B)(ii) to require mandatory detention without bond hearings for asylum seekers who were initially subject to expedited removal but later transferred to full removal proceedings after establishing a credible fear." Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1168 (W.D. Wash. 2023) (citing Matter of M-S-, 27 I. & N. Dec. 509, 515–17 (2019)).

---

[1] By the time this Order is issued, Petitioner will have been in detention for almost two years. See ECF No. 5, pg. 1 ("He entered without inspection on April 26, 2024. Id. He was immediately taken into immigration custody.").

4

"[I]n a series of decisions since 2001, 'the Supreme Court and [the Ninth Circuit] have grappled in piece-meal fashion with whether the various detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing.'" Rodriguez v. Robbins (Rodriguez II), 715 F.3d 1127, 1134 (9th Cir. 2013) (quoting Rodriguez v. Hayes (Rodriguez I), 591 F.3d 1105, 1114 (9th Cir. 2010)). In Zadvydas v. Davis, two noncitizens, who had been ordered removed but whose removal could not be effectuated due to lack of a repatriation treaty or because their designated countries refused to accept them, challenged their prolonged detention under 8 U.S.C. § 1231(a)(6), which governs detention beyond the ninety-day removal period. Applying the canon of constitutional avoidance because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem," the Supreme Court "read an implicit limitation into" § 1231(a)(6) and held that the statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." Zadvydas, 533 U.S. at 689. Thus, "after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was 'good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.'" Prieto-Romero, 534 F.3d at 1062 (quoting Zadvydas, 533 U.S. at 701).

In Demore v. Kim, 538 U.S. 510 (2003), the Supreme Court rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c). Demore distinguished Zadvydas by emphasizing detention under § 1226(c) has a "definite termination point" and "in the majority of the cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas." Id. at 529 (noting that "in 85% of the cases in which aliens are detained pursuant to § 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days" and "[i]n the remaining 15% of cases, in which the alien appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter").[2]

---

[2]    Though the Supreme Court assumed, based on the government's brief in Demore, the average time of detention was less than six months, the government clarified in 2016 that for

5

In the Rodriguez class action, noncitizens "challenge[d] their prolonged detention pursuant to 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), and 1231(a) without individualized bond hearings and determinations to justify their continued detention." Rodriguez v. Robbins (Rodriguez III), 804 F.3d 1060, 1065 (9th Cir. 2015). In Rodriguez II, to avoid constitutional concerns, the Ninth Circuit held that mandatory detention under § 1226(c) and § 1225(b) is implicitly time-limited and expires after six months. Thereafter, the government's authority to detain shifts to § 1226(a), which requires a bond hearing governed by the procedural requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011).[3] Rodriguez II, 715 F.3d at 1138–44. In Rodriguez III, the Ninth Circuit held that for noncitizens detained under 8 U.S.C. §§ 1225(b), 1226(a), and 1226(c), "the government must provide periodic bond hearings every six months so that noncitizens may challenge their continued detention as 'the period of . . . confinement grows.'" Rodriguez III, 804 F.3d at 1089 (quoting Diouf v. Napolitano (Diouf II), 634 F.3d 1081, 1091 (9th Cir. 2011)).

In Jennings v. Rodriguez, the Supreme Court rejected the Ninth Circuit's interpretation that §§ 1225(b) and 1226(c) included "an implicit 6–month time limit on the length of mandatory detention" and reversed Rodriguez III, holding that the Ninth Circuit misapplied the constitutional avoidance canon to find a statutory right under 8 U.S.C. § 1226(a) to "periodic bond hearings every six months in which the Attorney General must prove by clear and convincing evidence that the alien's continued detention is necessary." Jennings, 583 U.S. 296, 304, 306. The Supreme Court remanded the case to the Ninth Circuit "to consider [the] constitutional arguments on their merits." Id. at 312. The Ninth Circuit, in turn, remanded the case to the district court to consider the constitutional arguments in the first instance, but noted

1999-2001, the "length of detention in cases where the alien appealed [was] 382 days, or a little more than a year." Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *5 (N.D. Cal. Jan. 7, 2019) (citations omitted).

[3]   In Singh, the Ninth Circuit provided guidance as to the procedural requirements for the bond hearings. Specifically, "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond." Singh, 638 F.3d at 1208. Due process also requires a contemporaneous record of the bond hearings, such as a transcript or audio recording. Id.

6

that it had "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 255, 256 (9th Cir. 2018).

Following Jennings, the Ninth Circuit upheld the "construction of § 1231(a)(6) to require a bond hearing before an IJ after six months of detention for an alien whose release or removal is not imminent" with the government "bear[ing] a clear and convincing burden of proof at such a bond hearing to justify an alien's continued detention." Aleman Gonzalez v. Barr, 955 F.3d 762, 766 (9th Cir. 2020). The Supreme Court reversed on other grounds, Garland v. Aleman Gonzalez, 596 U.S. 543, 546 (2022), and "[i]n a companion case decided that same day arising from the Third Circuit, Johnson v. Arteaga-Martinez, [596] U.S. [573], 142 S. Ct. 1827, 213 L.Ed.2d 125 (2022), the Supreme Court separately rejected [the Ninth Circuit's] statutory interpretation in Aleman Gonzalez," Rodriguez Diaz v. Garland, 53 F.4th 1189, 1201 (9th Cir. 2022), holding that "there is no plausible construction of the text of § 1231(a)(6) that requires the Government to provide bond hearings before immigration judges after six months of detention, with the Government bearing the burden of proving by clear and convincing evidence that a detained noncitizen poses a flight risk or a danger to the community," Arteaga-Martinez, 596 U.S. at 581. Arteaga-Martinez declined to reach the constitutional claims. Id. at 583.

"[A]fter the Supreme Court's decisions in Jennings and Arteaga-Martinez, it remain[ed] undetermined whether the Due Process Clause requires additional bond procedures under *any* immigration detention statute" until the Ninth Circuit's decision in Rodriguez Diaz, which concerned a petitioner detained pursuant to 8 U.S.C. § 1226(a) who sought a second bond hearing before an IJ at which the government would bear the burden of proof by clear and convincing evidence. Rodriguez Diaz, 53 F.4th at 1201, 1193. The Ninth Circuit held that "due process does not require the procedures Rodriguez Diaz would have us impose" because "Section 1226(a) offers substantial procedural protections to detained persons, and Rodriguez Diaz has not shown that these procedures violate due process, either facially or as applied." Id.

However, the Ninth Circuit has yet to take a position on whether due process

requires a bond hearing for noncitizens for whom detention is mandatory. See Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022) ("Whether due process requires a bond hearing for aliens detained under § 1226(c) is not before us today. And we take no position on that question."), vacated and remanded on other grounds, 144 S. Ct. 1339 (2024); Avilez, 69 F.4th at 538 (declining to make a determination on whether due process required a bond hearing for noncitizen detained under § 1226(c) and remanding to district court for consideration of due process claim). The Ninth Circuit has recognized that "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" based on due process and noted that "[a]ccording to one such court order, the 'prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" Martinez, 36 F.4th at 1223 (citation omitted).

### B.    Procedural Due Process

#### 1.    Bright-Line Rule

Petitioner asserts that his Fifth Amendment right to Due Process is violated due to prolonged detention without a bond hearing. See ECF No. 1, pg. 6. Respondent contends that Petitioner's detention is mandatory until he is removed and Petitioner's removal period cannot begin until Petitioner's appeal is resolved. See ECF No. 5, pg. 1.  Respondent does not address the length of Petitioner's detention and whether the constitution affords due process rights to noncitizens subject to prolonged detention.

Three circuit courts of appeals have "reject[ed] a bright-line constitutional rule requiring a bond hearing after six months of detention—or after any fixed period of detention—in the context of a Congressional mandate, in the immigration context, to detain." Black v. Decker, 103 F.4th 133, 150 (2d Cir. 2024) (citing Reid v. Donelan, 17 F.4th 1, 7–9 (1st Cir. 2021); German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203, 211 (3d Cir. 2020)). The undersigned will follow this line of cases and declines "to adopt a presumption of reasonableness or unreasonableness of any duration of detention." Black, 103 F.4th at 150 (internal quotation mark omitted) (quoting German Santos, 965 F.3d at 211).

#### 2.    *Demore*

8

As noted above, Demore rejected a facial challenge to mandatory detention under 8 U.S.C. § 1226(c) and "said nothing about whether due process may eventually require a hearing." Black, 103 F.4th at 149. In Nielsen v. Preap, 586 U.S. 392 (2019), the Supreme Court explicitly stated that as-applied constitutional challenges to 8 U.S.C. § 1226(c) are not foreclosed. Preap, 586 U.S. at 420. Furthermore, Demore does not directly address whether § 1225(b) as applied to Petitioner is unconstitutional.

Although the Ninth Circuit has yet to take a position on whether due process requires a bond hearing for noncitizens detained under 8 U.S.C. § 1225(b), the First, Second, and Third Circuits have found that "the Due Process Clause imposes some form of 'reasonableness' limitation upon the duration of detention . . . under [section 1226(c)]." Reid, 17 F.4th at 7 (alterations in original) (citation omitted). Accord Black, 103 F.4th at 138 ("conclud[ing] that a noncitizen's constitutional right to due process precludes his unreasonably prolonged detention under section 1226(c) without a bond hearing"); German Santos, 965 F.3d at 209–10 (holding that after Demore and Jennings, petitioners detained pursuant to § 1226(c) can still bring as-applied challenges to their detention and that due process affords them a bond hearing once detention becomes unreasonable). Additionally, "essentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" Martinez v. Clark, No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019) (citation omitted), report and recommendation adopted, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019).

Based on the foregoing, the Court finds that unreasonably prolonged mandatory immigration detention without an individualized bond hearing violates due process. The Court now turns to whether Petitioner's detention has become unreasonably prolonged such that due process requires a bond hearing.

### 3.    *Lopez* Test

Courts in this circuit have taken various approaches to determining whether procedural due process requires a bond hearing in a particular case. See Rodriguez v. Nielsen, No. 18-cv-04187-TSH, 2019 WL 7491555, at *6 (N.D. Cal. Jan. 7, 2019) (six-month bright-line rule

in § 1226(c) context); <u>Banda v. McAleenan</u>, 385 F. Supp. 3d 1099, 1117 (W.D. Wash. 2019) (six-factor test that considers "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal" in § 1225(b) context); <u>Juarez v. Wolf</u>, No. C20-1660-RJB-MLP, 2021 WL 2323436, at *4 (W.D. Wash. May 5, 2021) (eight-factor test that considers "whether the detention will exceed the time the petitioner spent in prison for the crime that made him [or her] removable" and "the nature of the crimes the petitioner committed" in addition to the six factors set forth above in § 1226(c) context (alteration in original)), report and recommendation adopted, 2021 WL 2322823 (W.D. Wash. June 7, 2021); <u>Henriquez v. Garland</u>, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5–6 (N.D. Cal. June 14, 2022) (applying <u>Mathews v. Eldridge</u> test to petitioner's due process claim requesting initial bond hearing in § 1226(c) context).

This Court previously found that "[t]o determine whether § 1226(c) detention has become unreasonable, the Court will look to the total length of detention to date, the likely duration of future detention, and the delays in the removal proceedings caused by the petitioner and the government." <u>Lopez v. Garland</u>, 631 F. Supp. 3d 870, 879 (E.D. Cal. 2022) (noting <u>Mathews</u> factors more suited to determining whether due process requires a second bond hearing and rejecting other multi-factor tests). Although <u>Lopez</u> concerned mandatory detention under § 1226(c), the Court finds <u>Lopez</u>'s reasoning applies equally to mandatory detention under § 1225(b). Accordingly, the Court will apply the <u>Lopez</u> test.

<em>a.    Total Length of Detention to Date</em>

Petitioner has been in immigration detention since April 26, 2024, almost two years. Courts have found shorter lengths of mandatory immigration detention without a bond hearing to be unreasonable. <u>See</u>, <u>e.g.</u>, <u>Black</u>, 103 F.4th at 137–38 (affirming district court judgment ordering bond hearing for petitioner detained seven months); <u>Perera v. Jennings</u>, No. 21-cv-04136-BLF, 2021 WL 2400981 (N.D. Cal. June 11, 2021) (granting TRO and ordering individualized bond hearing for petitioner detained almost two months); <u>Sajous v. Decker</u>, No.

10

18-CV-2447 (AJN), 2018 WL 2357266, at *1, 11 (S.D.N.Y. May 23, 2018) (granting preliminary injunction and ordering individualized bond hearing for petitioner detained more than eight months); Jarpa v. Mumford, 211 F. Supp. 3d 706, 710, 717 n.6 (D. Md. 2016) (granting habeas relief and ordering individualized bond hearing for petitioner detained nearly eleven months). But see De Oliveira Viegas v. Green, 370 F. Supp. 3d 443, 448–49 (D.N.J. 2019) ("As a general matter, courts in this District have found detention for a year, or just over a year, insufficient to support an as-applied challenge to a § 1226(c) detention post-Jennings.").

"In general, '[a]s detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing.'" Gonzalez v. Bonnar, No. 18-cv-05321-JSC, 2019 WL 330906, at *3 (N.D. Cal. Jan. 25, 2019) (alteration in original) (quoting Muse v. Sessions, 409 F. Supp. 3d 707, 716 (D. Minn. 2018)). Here, Petitioner has been detained for almost two years. Accordingly, the Court finds that the total length of detention factor weighs in favor of Petitioner.

### b.   Likely Duration of Future Detention

"[A]s have nearly all the other courts to consider this issue . . . the starting point of the analysis is the length of detention—both how long the petitioner has been detained and *how long the detention is likely to last*." Gonzalez, 2019 WL 330906, at *5 (emphasis added) (collecting cases). "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." German Santos, 965 F.3d at 211. Here, Petitioner's petition for review with the Ninth Circuit was filed July 7, 2025, but, according to the Ninth Circuit Docket,[4] as of the date of this order, has yet to be decided. See

> The usual removal process involves an evidentiary hearing before an immigration judge, and at that hearing an alien may attempt to show that he or she should not be removed. Among other things, an alien may apply for asylum on the ground that he or she would be persecuted if returned to his or her home country. § 1229a(b)(4); 8 C.F.R. § 1240.11(c) (2020). If that claim is rejected and the alien is ordered removed, the alien can appeal the removal order to the Board of Immigration Appeals and, if that appeal is unsuccessful, the alien is generally entitled to review in a federal court of appeals. 8 U.S.C. §§ 1229a(c)(5), 1252(a).

---

[4] The Court may take judicial notice of court records. United States v. Howard, 381 F.3d 873, 876 n.1 (9th Cir. 2004).

Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 108 (2020).

Although the Court recognizes that future events are difficult to predict, the Court nevertheless finds that the time Petitioner has already waited for the appeal to be heard demonstrates there is a strong likelihood that Petitioner's future detention will be sufficiently lengthy such that this factor weighs in favor of Petitioner. See German Santos, 965 F.3d at 212 (finding that appeal of cancellation of removal order with the BIA "could take months" and potential review in the Third Circuit "would add months more in prison" such that "the likelihood that [petitioner's] detention will continue strongly supports a finding of unreasonableness"); Banda, 385 F. Supp. 3d at 1119 (finding that appeal of removal order with the BIA and review in the Ninth Circuit may take up to two years or longer and favors granting petitioner a bond hearing).

<blockquote>c.      Delays in Removal Proceedings Caused by Petitioner and Government</blockquote>

The record shows that Petitioner was ordered to be removed more than seven months after Petitioner was processed for expedited removal, Petitioner then filed a notice of appeal less than a month after he was ordered removed, six months later the Board of Immigration Appeals dismissed the appeal, and about one month later, Petitioner filed a petition for review with the Ninth Circuit. The declaration provided by Respondent states that from May 2024 through November 2024, "Generally, his master calendar hearings were reset to give Petitioner additional time to prepare and file his applications for relief from removal." ECF No. 5-1, pg. 3. The record is unclear whether Petitioner requested the hearings be reset. Absent additional information, the Court finds that the delay factor weighs neither for nor against Petitioner.

<blockquote>4.      Weighing the Factors</blockquote>

The length of detention to date, "which is the most important factor," Banda, 385 F. Supp. 3d at 1118,7 and the likely duration of future detention weigh in favor of finding continued detention unreasonable weigh in favor of Petitioner.

The Court appreciates that the government has a strong interest in enforcing immigration laws, ensuring the presence of noncitizens at their removal proceedings, and protecting the public from danger. However, the "government interest at stake here is not the continued detention of Petitioner, but the government's ability to detain him *without a bond hearing*." Zagal-Alcaraz v. ICE Field Off., No. 3:19-cv-01358-SB, 2020 WL 1862254, at *7 (D. Or. Mar. 25, 2020) (emphasis added), report and recommendation adopted, 2020 WL 1855189 (D. Or. Apr. 13, 2020). See Henriquez, 2022 WL 2132919, at *5 ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). On the other hand, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. See Rodriguez Diaz, 53 F.4th at 1207 ("We have also held, more generally, that an individual's private interest in 'freedom from prolonged detention' is 'unquestionably substantial.'" (quoting Singh, 638 F.3d at 1208)). Accordingly, the Court finds that Petitioner's continued detention has become unreasonable and due process requires that Petitioner be provided a bond hearing. Thus, the undersigned will recommend granting as to Petitioner's due process claim and request for a bond hearing before an immigration judge.

### C.    Remedy

In the petition, Petitioner requests "release from detention [] or schedule a bond hearing by neutral decisionmaker." ECF No. 1, pg. 7. Respondent contends that "[e]ven if Petitioner's detention was discretionary, Petitioner has had a custody redetermination, and Petitioner has not provided any evidence in support of a change in circumstance since that custody redetermination." ECF No. 5, pg. 3.

However, the Court is concerned with the conflicting information provided by Respondent – Petitioner's change in custody was denied April 9, 2025, due to the immigration

court lacking jurisdiction but then Petitioner's custody redetermination on July 7, 2025, was denied upon a finding Petitioner is a flight risk. See ECF No. 5-2. Respondent does not explain how, if the immigration court lacked jurisdiction April 9, 2025, to redetermine Petitioner's custody, then had jurisdiction to deny Petitioner's request for redetermination July 7, 2025. Respondent cannot claim the immigration court both lacks jurisdiction to redetermine Petitioner's custody and then also rely on a subsequent custody redetermination to say Petitioner does not warrant a new custody redetermination hearing. The Response indicates that Respondent may be aware of this conflicting information because in the Background section, Respondent avoided saying that the immigration court claimed to lack jurisdiction and instead stated that the April request was "denied." ECF No. 5, pg. 2. Either the immigration court has jurisdiction to hear the matter, or it does not. Given the record provided by Respondents conflicts itself, the Court cannot find that Petitioner was provided a constitutionally adequate bond hearing before a neutral decisionmaker.

Thus, the undersigned finds that a bond hearing before an immigration judge is appropriate, "consistent with other post-Jennings cases," and will therefore recommend such hearing be ordered. Lopez, 631 F. Supp. 3d at 882. See Doe v. Becerra, 697 F. Supp. 3d 937, 948 (N.D. Cal. 2023) ("[C]ourts in this Circuit have regularly found that the IJ is the proper authority to conduct bond hearings and determine a detainee's risk of flight or dangerousness to the community." (citing Martinez, 36 F.4th at 1223 ("district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods"))); Mansoor v. Figueroa, No. 3:17-cv-01695-GPC (NLS), 2018 WL 840253, at *4 (S.D. Cal. Feb. 13, 2018) ("The Court finds the IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program[.]").

The Court further finds that general principles of procedural due process require that the government here "prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the bond hearing must comport with the other requirements of Singh v. Holder, 638 F.3d 1196, 1208 (9th Cir. 2011). See Martinez v.

Clark, 124 F.4th 775, 785 (9th Cir. 2024) (stating that "the BIA properly noted that the government bore the burden to establish by clear and convincing evidence that Martinez is a danger to the community" with respect to a bond hearing for a noncitizen detained under § 1226(c)); Black, 103 F.4th at 159 (affirming district court's order "requir[ing] the government to show at such a bond hearing, by clear and convincing evidence, the need for Black's continued detention" under § 1226(c)); German Santos, 965 F.3d at 214 (holding that in order to justify a noncitizen's continued detention under § 1226(c) "the Government bears the burden of persuasion by clear and convincing evidence. That evidence must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community"); Juarez, 2021 WL 2323436, at *8 (requiring bond hearing to comport with requirements of Singh); Banda, 385 F. Supp. 3d at 1120–21 (same); Djelassi v. ICE Field Off. Dir., 434 F. Supp. 3d 917, 923–24 (W.D. Wash. 2020) (same); Martinez, 2019 WL 5968089, at *11 (same and collecting cases); see also Abubakar Abdul-Samed v. Warden of the Golden State Annex Det. Facility, No. 1:25-cv-00098-SAB-HC, 2025 LX 275135 (E.D. Cal. July 24, 2025). In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez, 872 F.3d at 1000. See Black, 103 F.4th at 138 (The district court "correctly directed the immigration judge ("IJ"), in setting his bond and establishing appropriate terms for his potential release, to consider his ability to pay and alternative means of assuring appearance.").

### III. CONCLUSION

Based on the foregoing, the undersigned recommends:

1.  It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED IN PART and DENIED IN PART. The petition is GRANTED as to Petitioner's procedural due process claim and request for a bond hearing before an immigration judge. The petition is DENIED as to Petitioner's request for release.

2.      It is RECOMMENDED that within thirty (30) days of the date of service of the District Judge's order, Respondent shall provide Petitioner with an individualized bond hearing before an immigration judge that complies with the requirements set forth in Singh v. Holder, 638 F.3d 1196 (9th Cir. 2011), and where "the government must prove by clear and convincing evidence that [Petitioner] is a flight risk or a danger to the community to justify denial of bond," id. at 1203. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the immigration judge should consider Petitioner's financial circumstances and alternative conditions of release. Hernandez v. Sessions, 872 F.3d 976, 1000 (9th Cir. 2017).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b).  Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 9, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

16